**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MLS NATIONAL MEDICAL
EVALUATION SERVICES, INC.,

    Plaintiff,

v.

JAMES W. TEMPLIN, M.D.,

    Defendant.
_____/

Case No. 08-11653
Hon. Gerald E. Rosen

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     July 9, 2008

PRESENT: Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

On January 18, 2008, Plaintiff MLS National Medical Evaluation Services, Inc., a Michigan corporation, commenced this suit in a Michigan state court against Defendant James Templin, M.D., a Kentucky physician, alleging that Defendant negligently or fraudulently issued an erroneous report of an independent medical evaluation ("IME") he had conducted pursuant to a contract between the parties. Defendant removed the case to this Court on April 18, 2008, citing the parties' diverse citizenship as the ground for removal. *See* 28 U.S.C. § 1332(a)(1).

In lieu of answering the complaint, Defendant filed the present motion on April 25, 2008, seeking the dismissal of this suit for lack of personal jurisdiction or, alternatively, the transfer of this action to Kentucky under 28 U.S.C. § 1404(a) as a more convenient forum. Plaintiff filed a response to this motion on May 30, 2008. Having reviewed the parties' submissions and the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court finds that Defendant's motion should be granted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff MLS National Medical Evaluation Services, Inc., a Michigan corporation with its principal place of business in Oakland County, Michigan, arranges independent medical evaluations ("IMEs") for insurance companies, employers, and other clients. In November of 2003, Plaintiff was asked by one of its clients, Wausau Benefits, Inc., to schedule an IME of Terry Hall, a Kentucky resident who claimed he was totally disabled due to chronic back pain. Pursuant to this request, Plaintiff contacted Defendant James W. Templin, M.D., who agreed to perform an IME of Mr. Hall at his office in Lexington, Kentucky.[1]

---

[1]According to Defendant, he has never advertised his services, solicited any business, or practiced medicine in Michigan. In addition, Defendant states that he had never transacted any

Defendant examined Mr. Hall on December 5, 2003. According to the complaint, Defendant was given the option to communicate his findings by telephone into Plaintiff's dictation system located in Michigan, and Defendant did so on or around December 11, 2003. According to Defendant's affidavit accompanying his motion, the report he communicated to Plaintiff via phone was an "exact copy" of one that he had dictated in his Kentucky office immediately following the IME. (Defendant's Motion, Ex. B, Templin Aff. at ¶¶ 11, 13.) Defendant further states that he sent this office dictation to a local transcription service in Lexington, and mailed a copy of the resulting report to Plaintiff before relaying a copy of this report by telephone.

According to the complaint, on December 16, 2003, Plaintiff prepared a hard copy of the report Defendant had phoned into Plaintiff's dictation system, and sent a copy of this report to Defendant for his review. Defendant allegedly "confirmed the accuracy and completeness of the report" and "authorized [it] with his signature," and Plaintiff then forwarded it to its client, Wausau Benefits. (Complaint at ¶¶ 26-27.) In this report, dated December 11, 2003, Defendant allegedly opined that "Mr. Hall would not be considered totally disabled from any occupational employment" that was consistent with the restrictions listed in the report. (Plaintiff's Response, Ex. D, 12/11/2003 Report at 14.) Based in part on this report, Wausau Benefits denied Mr. Hall's claim for disability benefits.

---

business in Michigan before Plaintiff asked him to perform an IME of Mr. Hall.

Yet, according to Defendant's deposition testimony in related federal district court litigation in Kentucky,[2] the report forwarded by Plaintiff to Wausau Benefits differed in at least one crucial respect from the report Defendant dictated in his office following his examination of Mr. Hall. In particular, Defendant confirmed at his deposition that his office report included the finding that he was "unable at this time based on Mr. Hall's presentation and examination to identify any work position, which I believe he could return to." (Defendant's Motion, Ex. G, Templin Dep. at 32.)[3] Defendant conceded that he had been given the opportunity to review and revise the version of the report produced by Plaintiff, and he accepted "full responsibility" for having signed this report, but he testified that he had only "[p]artly" reviewed the report provided by Plaintiff and had "made an assumption" that it was substantively the same as his office report, without confirming this assumption by carefully comparing the two. (*Id.* at 40, 42.)

According to Defendant, when Mr. Hall learned that his claim for benefits had been denied, he called Defendant and accused him of changing his report "behind his back." (*Id.* at 35.)[4] Defendant telephoned Plaintiff to inquire about this apparent discrepancy, and was referred to an attorney who "was quite upset at [Defendant]" and wanted to know "how the patient got a copy of their report." (*Id.* at 52.) Plaintiff, for its

---

[2]This related suit is discussed in greater detail below.

[3]Beyond this specific finding, Defendant testified to a number of surrounding passages in his office report that do not appear in the report sent by Plaintiff to Wausau Benefits. (*See id.*)

[4]Defendant testified at his deposition that Mr. Hall would have been aware of the substance of his report because he dictated it in Mr. Hall's presence. (*See id.* at 23-24, 35.)

part, alleges that Defendant "was pressured by Hall's lawyers to alter his opinion of Hall's disability status," and that he "agreed to change his opinion concerning Hall's disability status." (Complaint at ¶ 29.)

In December of 2004, Plaintiff asked Defendant to prepare an "addendum report" in order to "clarify[] [his] opinion as it relates to Mr. Hall's disability status." (Plaintiff's Response, Ex. G.) In response, Defendant dictated a letter into Plaintiff's dictation system, in which he concluded that Mr. Hall "would be considered totally disabled and unable to perform any type of meaningful, gainful employment." (Complaint at ¶ 31.) Plaintiff forwarded this letter to Wausau Benefits, which subsequently reinstated Mr. Hall's disability benefits.

In April of 2006, Mr. Hall filed suit against Plaintiff in a Kentucky state court, alleging that Wausau Benefits had denied his claim for disability benefits as a result of a "phony report" produced by Plaintiff that "contained statements not made by Dr. Templin in any form or fashion" and that "omitted critical statements and opinions by Dr. Templin." (Defendant's Motion, Ex. C, Hall Complaint at ¶ 10.) Plaintiff removed the case to the United States District Court for the Eastern District of Kentucky, and later added Defendant and Wausau Benefits as third-party defendants. (*See* Defendant's Motion, Ex. F, Third Party Complaint.) The third-party claims against Defendant were dismissed, however, on the ground that Kentucky law did not permit claims of indemnity arising from intentional misconduct of the sort alleged in Mr. Hall's underlying complaint. (*See* Defendant's Motion, Ex. H, 5/7/2007 Opinion and Order.)

Plaintiff then commenced the present suit against Defendant in a Michigan state court, asserting state-law claims of breach of contract, negligence, breach of fiduciary duty, tortious interference, fraud, and negligent or innocent misrepresentation. Defendant removed the case to this Court on April 18, 2008, citing the parties' diverse citizenship.

### III. ANALYSIS

#### A. The Standards Governing Defendant's Motion

Through his present motion, Defendant challenges this Court's exercise of personal jurisdiction over him, *see* Fed. R. Civ. P. 12(b)(2), and also contends that venue is inconvenient in this District, *see* Fed. R. Civ. P. 12(b)(3). As to the former issue, Plaintiff has the burden of establishing the Court's personal jurisdiction over Defendant. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Because the Court is resolving this issue solely upon the written record, Plaintiff "need only make a prima facie showing of jurisdiction." *Neogen Corp.*, 282 F.3d at 887 (internal quotation marks and citation omitted). In determining whether this showing has been made, the Court does not "consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to" Plaintiff as the non-moving party. 282 F.3d at 887 (citations omitted).

As to Defendant's request for a transfer of venue, the courts have wide discretion under 28 U.S.C. § 1404(a) to grant such a request in order to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964) (internal quotation marks and citation

6

omitted).  Under § 1404(a), three criteria must be satisfied:  (1) that the action could have been brought in the transferee district; (2) that a transfer serves the interest of justice; and (3) that transfer is in the convenience of the witnesses and parties.  *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994).

**B.    Plaintiff Has Failed to Make a *Prima Facie* Showing of the Court's Personal Jurisdiction over Defendant.**

In diversity cases such as the present one, the Court must apply the law of the forum state to determine whether it may exercise jurisdiction over Defendant.  *Shah v. Nu-Kote Int'l, Inc.*, 898 F. Supp. 496, 500 (E.D. Mich. 1995), *aff'd*, 106 F.3d 401 (6th Cir. 1997).  Michigan's long-arm statute governing limited personal jurisdiction over individuals, Mich. Comp. Laws § 600.705, has been interpreted as conferring upon Michigan courts the "maximum scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment."  *Brink v. Ecologic, Inc.*, 987 F. Supp. 958, 961 (E.D. Mich. 1997) (internal quotation marks and citation omitted); *see also Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623, 623-24 (1971).  The Sixth Circuit Court of Appeals has adopted a three-part test for determining whether this due process standard is met:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989) (internal quotation

marks and citation omitted).

### 1. Purposeful Availment

The first, "purposeful availment" element of this due process standard "is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a substantial connection with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). This element seeks to ensure that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Compuserve*, 89 F.3d at 1263 (quoting *Burger King*, 471 U.S. at 475).

To satisfy this requirement, it is not necessary that a defendant be physically present in the forum state. *Compuserve*, 89 F.3d at 1264. Rather, even without physical presence, a defendant is subject to a court's jurisdiction if his activities are "purposefully directed" toward the residents of the forum state. *Compuserve*, 89 F.3d at 1264 (quoting *Burger King*, 471 U.S. at 476). Thus, the court found purposeful availment in *Compuserve,* 89 F.3d at 1264, where the defendant, a Texas resident, had chosen to advertise and load his computer software on the plaintiff's Ohio-based computer. *Compare LAK*, 885 F.2d at 1300 (holding that the defendant did not reach out to the forum state of Michigan where he did not advertise the subject property for sale in that state and had no "'program' for seeking out prospective buyers" there). Other examples

of activities that are "purposefully directed" toward a state include the solicitation of sales by mail, the transmission of broadcasts into a state, and the shipment of products into a state for sale by an independent contractor. *See Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 382 (6th Cir. 1968).

In analyzing whether a defendant has reached out to the forum state, the Sixth Circuit has emphasized that telephone calls, letters, and faxes, standing alone, are "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected." *LAK*, 885 F.2d at 1301. As the court explained, a non-resident defendant is not obliged to "hang up the phone" in order to "protect . . . against a subsequent finding of 'purposeful availment' of the benefits of the laws of whatever state or states the calls happened to come from." *LAK,* 885 F.2d at 1301; *see also Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (holding that the defendant's telephone calls and faxes to the Michigan plaintiff were "immaterial" to the question whether the defendant had reached out to Michigan). Neither has the court been willing to confer any "talismanic significance" upon a "numerical count of the calls and letters" exchanged between the forum-based plaintiff and the non-resident defendant. *LAK,* 885 F.2d at 1301. Rather, the quality of the contacts, and not their quantity, is the issue in demonstrating purposeful availment. 885 F.2d at 1301.

In assessing the quality of a non-resident defendant's contacts with the forum state, the courts have distinguished between efforts to "create continuing relationships and obligations" and mere "'one-shot' transaction[s]." *Kerry Steel*, 106 F.3d at 151 (internal

9

quotation marks and citation omitted). Thus, the Sixth Circuit held that personal jurisdiction was lacking in *Kerry Steel,* 106 F.3d at 151, where the parties' contract for the purchase of steel was found to be "nothing more than an isolated transaction," and there was "no indication in the record that [the non-resident defendant] intended to create an ongoing relationship in Michigan with" the plaintiff. *See also LAK*, 885 F.2d at 1303 (holding that the non-resident defendant's sale of Florida property to a Michigan plaintiff did not have "'ongoing,' or 'far-reaching,' or 'continuous,' or 'substantial' consequences in the Michigan real estate market"). In *Compuserve*, 89 F.3d at 1265, in contrast, the court's finding of personal jurisdiction rested in part upon evidence of an "ongoing marketing relationship" between the parties, with the non-resident defendant having sent software to the Ohio plaintiff "repeatedly for some three years." *See also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (holding that a non-resident defendant who had "transact[ed] business by negotiating and executing a contract via telephone calls and letters to an Ohio resident" had "purposefully availed himself of the forum by creating a continuing obligation in Ohio").

Applying these principles here, the Court finds no basis for concluding that Defendant purposefully availed himself of the privilege of doing business in Michigan. First, the parties' business relationship was a "one-shot" transaction. So far as the record reveals, Plaintiff had never before engaged Defendant to perform an IME, and there is no evidence of any intent to conduct any further business beyond Defendant's one-time examination of Mr. Hall. Rather, all of the parties' interactions concerned their single,

10

stand-alone agreement to conduct an IME of Mr. Hall. In this respect, then, the parties' business relationship here is analogous to the transactions in *Kerry Steel* (a single sale of steel coils) and in *LAK* (a sale of a single parcel of property), and far different from the relationship in *Compuserve*, in which the defendant had sent software to the plaintiff's computer system for three years with the intent to continue doing so.

Next, while Defendant entered into a contract with a Michigan corporation, it cannot be said that he "reached out" to Michigan in order to do so. Defendant states without contradiction that he has never advertised his services in Michigan or solicited business in this state. Rather, Plaintiff initiated the contact that led to the parties' one-time transaction, soliciting Defendant to perform an IME at his office in Lexington, Kentucky. Moreover, the parties' agreement did not demand Defendant's physical presence in Michigan; instead, Defendant's obligations could be (and were) carried out almost exclusively in his home state of Kentucky, with just a handful of mailings and telephone calls to his Michigan business partner. Again, this case is similar in this respect to *Kerry Steel*, in which the defendant had no offices in Michigan, never sent employees to Michigan, and negotiated a one-time shipment of steel coils via telephone and fax.

Finally, not only were Defendant's contacts with Michigan fairly limited, but the quality of these contacts does not support a finding of purposeful availment. As Plaintiff acknowledges, the contacts directed by Defendant toward Plaintiff consisted of (i) returning some initial paperwork to Plaintiff confirming the parties' agreement, (ii) dictating an initial report and an addendum over the telephone into Plaintiff's in-house

11

dictation system, (iii) returning a corrected and signed version of the report Plaintiff had produced from Defendant's dictation, and (iv) telephoning Plaintiff twice.[5] Under the analogous circumstances presented in *LAK,* 885 F.2d at 1301, the Sixth Circuit found no purposeful availment, where the non-resident defendant's attorney "originate[d] some calls" and sent "three draft contracts" to the Michigan plaintiff, but where "the majority of the . . . telephone calls" were originated by the plaintiff's representative. Similarly, and as noted above, the court in *Kerry Steel,* 106 F.3d at 151, deemed it "immaterial" that the non-resident defendant "placed telephone calls and sent faxes to" the Michigan plaintiff, where there otherwise was no evidence that this defendant had reached out to Michigan. *See also Calphalon Corp. v. Rowlette,* 228 F.3d 718, 723 (6th Cir. 2000) (discounting the non-resident defendant's contacts with the forum state of Ohio where they "occurred solely because [the plaintiff corporation] chose to be headquartered in Ohio, not because [the defendant] sought to further its business and create 'continuous and substantial' consequences there"); *International Technologies Consultants, Inc. v. Euroglas S.A.,* 107 F.3d 386, (6th Cir. 1997) (observing that "the only reason the communications in question here were directed to Michigan was that [the plaintiff corporation] found it convenient to be present there").

---

[5]In its response to Defendant's motion, Plaintiff asserts that there were "at least seven to eight" telephone conversations between Defendant or his office staff in Kentucky and Plaintiff's representatives in Michigan. (Plaintiff's Response Br. at 5.) Yet, Plaintiff does not identify which of these calls were *initiated* by Defendant. Based on Plaintiff's own chronology, it appears that Defendant initiated telephone calls to Plaintiff's representatives on two occasions, once in January of 2004 and once in the period between May and December of 2004.

Just as the contacts in these prior cases were found to be merely "ancillary" to a particular business transaction between parties in different states, and not indicative of the non-resident defendant's purposeful availment of the privilege of conducting business in the forum state, *see Kerry Steel,* 106 F.3d at 151; *LAK,* 885 F.2d at 1301, the Court finds that Defendant's contacts with Michigan in this case were strictly confined in scope to his one-time, limited agreement to perform an IME of a Kentucky resident as requested by a Michigan corporation. As the case law illustrates, the quality of these contacts does not demonstrate purposeful availment, and the modest number of these contacts surely does not suggest otherwise. Accordingly, the Court finds that Plaintiff has failed to make a *prima facie* showing that Defendant purposefully availed himself of the privilege of conducting activities in Michigan.

### 2. Forum-Related Activities

Because purposeful availment is the "*sine qua non*" of a court's due process inquiry, *Kerry Steel,* 106 F.3d at 150 (internal quotation marks and citation omitted), and because the Court has determined that this first element of the due process standard has not been satisfied in this case, it is unnecessary to discuss the remaining two elements of this standard at any great length. Under the second prong of the due process inquiry, the Court must consider whether the current controversy arises from Defendant's forum-related activities. This element is satisfied so long as the operative facts of the controversy are related to Defendant's contact with the state. *Mohasco*, 401 F.2d at 384 & n.29.

Plaintiff has made a *prima facie* showing of such a relationship here. Plaintiff's claims in this case arise principally from alleged discrepancies between Defendant's findings in his examination of Mr. Hall and his report of those findings as dictated into Plaintiff's in-house system and reflected in a written report sent to Defendant for his review and signature. Defendant's contacts with Michigan — most prominently, his use of Plaintiff's dictation system, along with his mailing of a signed report to Plaintiff's office in Michigan that allegedly deviated from the report he dictated in his office immediately after the IME — bear a significant connection to the claims advanced in Plaintiff's complaint. Consequently, this prong of the due process inquiry is satisfied.

### 3. Reasonableness of Exercise of Jurisdiction

As the third and final element of its due process inquiry, the Court must consider whether Defendant's actions, or the consequences brought about by these actions, have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable. The courts look at several factors when assessing the reasonableness of the exercise of jurisdiction, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Compuserve,* 89 F.3d at 1268 (internal quotation marks and citations omitted).

The Court finds that the exercise of jurisdiction here would be unreasonable. First, Defendant would unquestionably be burdened by this exercise of jurisdiction, as he would be required to bear the expense and inconvenience of traveling to Michigan and hiring

14

local counsel. While Plaintiff points out that it will bear similar burdens if forced to litigate elsewhere, the Court observes that Plaintiff already has incurred at least a portion of this burden in defending the suit brought by Mr. Hall in Kentucky. Moreover, this burden is more appropriately placed upon Plaintiff than Defendant, where Plaintiff reached out to Defendant in Kentucky to initiate the parties' relationship.

Next, although Michigan plainly has an interest in protecting the rights and interests of businesses incorporated in this state, this is offset to a significant extent by the interest of at least one other state (Kentucky) in securing an efficient resolution of the present controversy. In particular, the locus of operative facts is in Kentucky, and the majority of the key witnesses are located in that state. In addition, the courts of that state are uniquely situated to compel the attendance and participation of unwilling witnesses, most or all of whom necessarily are located in Kentucky — Plaintiff, after all, can secure the appearance of its employees, whether this suit is litigated in Michigan or elsewhere.

On balance, then, the Court finds that the exercise of jurisdiction over Defendant would not be reasonable in this case. Because Plaintiff has failed to make a *prima facie* showing as to this or the "purposeful availment" prong of the due process inquiry, the Court agrees with Defendant that this case must be dismissed for lack of personal jurisdiction.[6]

## IV. **CONCLUSION**

---

[6] In light of this ruling, the Court need not address Defendant's alternative request that this case be transferred to the Kentucky federal district court under 28 U.S.C. § 1404(a).

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's April 25, 2008 motion to dismiss is GRANTED.

                                                  s/Gerald E. Rosen
                                                  Gerald E. Rosen
                                                  United States District Judge

Dated: July 9, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 9, 2008, by electronic and/or ordinary mail.

                                                  s/LaShawn R. Saulsberry
                                                  Case Manager